**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Ingrid Valdes | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Rachel Gezerseh | Pamela Thakur |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS (Filed June 15, 2017, Dkt. 22)

## I. INTRODUCTION

On April 14, 2017, plaintiff Zhang Xudong filed this action against John Bradford Flecke, Hung Ern Toh, Barr Holdings, LLC and Barr Consulting and Holdings, Inc. (collectively "the Barr Entities"), DemarestBoston Legal ("Demarest"), and 1776 Wealth Architects ("Architects") (collectively "Defendants"). Dkt. 1. On May 25, 2017, plaintiff filed a first amended complaint. Dkt. 17 ("FAC"). Plaintiff alleges that defendants and Jinsi Shu entered into a series of contracts that contained false promises intended to entice Shu into investing money in Toh's businesses, the Barr Entities, as part of a fraudulent immigration scheme. Id. Shu assigned his rights against defendants to plaintiff. Id. ¶ 4. Plaintiff alleges claims for: (1) fraud, (2) conversion, (3) rescission and restitution due to fraud, (4) breach of oral contract, (5) breach of fiduciary duty, and (6) violation of the California Unfair Competition Law pursuant to California Business and Professions Code §§ 17200 et seq. ("UCL").

On June 15, 2017, defendants filed the instant motion to dismiss. Dkt. 22 ("MTD"). Plaintiff filed an opposition to defendants' motion on July 31, 2017, dkt. 29 ("Opp'n"), and defendants filed their reply on August 4, 2017.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT           "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

## II. BACKGROUND

On December 12, 2016, plaintiff purchased from Shu an assignment of Shu's rights against defendants. FAC ¶ 33. Plaintiff alleges the following facts leading up to the assignment.

Plaintiff is a citizen of the People's Republic of China. Id. ¶ 15. Shu is a Chinese National who entered into a series of contracts with defendants to obtain their services in order to help him acquire U.S. citizenship. Id. ¶ 17. Based on representations made by defendants in the contracts, Shu believed that if he invested $250,000 with Toh and the Barr Defendants, the money would be kept in a holding account until he qualified for an L-1 visa.[1] Id. ¶¶ 1, 35.

Plaintiff alleges that Toh is a citizen of California, and at all relevant times resided in Los Angeles County. Id. ¶ 7. On information and belief, plaintiff alleges that Barr Consulting and Holdings, Inc. is a California corporation and that Barr Holdings, LLC is a Nevada corporation with its principal place of business in California and Nevada. Id. ¶¶ 8–9. Plaintiff alleges that Toh used these Barr Entities to further the fraudulent immigration investment scheme. Id. ¶¶ 8–9.

Plaintiff alleges that Flecke is a citizen of Massachusetts and Florida who at all relevant times resided in Massachusetts and Florida. Id. ¶ 6. Plaintiff alleges that DemarestBoston Legal is a law firm owned and operated by Flecke, and that its principal place of business is located in Boston, Massachusetts. Id. ¶ 10. On information and belief, plaintiff alleges that at all relevant times Flecke was not licensed as an attorney in Massachusetts. Id. Beginning in late 2016, Demarest became defunct, and Flecke moved from Massachusetts to Florida. Id. Plaintiff alleges that Flecke used Demarest to further the fraudulent immigration investment scheme. Id. Similarly, plaintiff alleges that 1776 Wealth Architects, LLC is a Florida corporation, and that at all relevant times after

---

[1] The Court notes that an L-1A nonimmigrant classification enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States. This classification also enables a foreign company that does not yet have an affiliated U.S. office to send an executive or manager to the United States with the purpose of establishing one.

UNITED STATES DISTRICT COURT "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

Flecke closed Demarest, Flecke began using Architects to further the fraudulent immigration investment scheme. Id. ¶ 11.

Plaintiff alleges that "defendants Toh and Flecke conspired to defraud numerous Chinese nationals into investing hundreds of thousands of dollars into Toh's entities, Barr Holding, LLC and Barr Consulting and Holding, Inc." Id. ¶ 1. Plaintiff alleges on information and belief that the Barr Entities "served as the alter ego for Toh." Id. ¶¶ 43, 52, 64, 86. Plaintiff alleges on information and belief that both Demarest and Architects "served as the alter egos for Flecke." Id. ¶¶ 44, 53, 65, 87. On information and belief plaintiff alleges "each Defendant was the agent and co-conspirator of each other defendant" and that Flecke, Toh, and the Bar Entities "were the agents, successors, partners and/or alter egos of each other, with such unity of ownership, management, interest and control that they should be considered a single enterprise." Id. ¶¶ 12–13.

On May 5, 2016, Shu signed two immigration legal services retainer agreements designating Barr Consulting & Holdings, Inc. as his immigration attorneys for the purpose of obtain the L-1 visa. Id. ¶ 18 & Ex. B ("Immigration Agreements"). Additionally on May 5, 2016, Shu and Barr Holdings, LLC, with Toh as the signatory, entered into a business acquisition agreement for the purchase of a "Residential Care Facility c/o Barr Consulting & Holdings Inc." Id. ¶ 18 & Ex. A ("Acquisition Agreement"). The second paragraph of the Acquisition Agreement states "the total purchase price of the Business is US$250,000, which will be paid in the following manner:

> Payable upon signature of immigration service contract, the funds are to be transferred into an escrow account bearing the name of the Parent Company in the People's Republic of China.
>
> Upon L-1 approval, the funds are released from escrow and the Buyer agrees that the total of US$250,000 will be used for the items as listed in Table 1.1. Upon receipt of US$250,000, [t]he seller will provide evidence of ownership.
>
> The validity of the purchase agreement is void and null with all fees listed on Table 1.1 are unconditionally refundable should the purchaser

UNITED STATES DISTRICT COURT       "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

do not acquire U.S. permanent residency after a reasonable period of 3 years.

Acquisition Agreement ¶ 2.

On May 11, 2016, Shu, Barr Consulting and Holdings, Inc., with Toh as the signatory, and Flecke entered into a holding agreement. FAC ¶ 20 & Ex. C ("Holding Agreement"). The Holding Agreement established a holding fund, into which Shu would deposit the $250,000 required by the Acquisition Agreement. FAC ¶ 10. The fund was to be held by Flecke in the client service account of his law firm, DemarestLegal. Id. ¶ 23. The Holding Agreement provides, in relevant part:

- "Barr and Depositor [Shu] hereby appoint and designate the Agent [Flecke] to receive, hold, and distribute the Holding Fund in accordance with the terms of this Agreement. Holding Agent hereby agrees to act as holding agent and to hold, safeguard, and disburse the Holding Fund pursuant to the terms and conditions hereof." Holding Agreement ¶ 1(a).
- "In accordance with the Business Acquisition Agreement, Depositor shall deposit cash in the amount of $250,000 ("the Holding Amount") with the Agent who will immediately deposit the Holding Amount in a client service account administered by Chase Bank (JP Morgan Chase Bank, N.A.) over which the Agent is sole signatory . . . " Id. ¶ 1(b).
- "The Holding Fund Shall be disbursed in cash by the Agent as follows:
(a) Upon receipt by the Agent of written instructions from Barr, absent contrary written notice from the Depositor, the Agent shall disburse the Holding Fund in accordance with Barr's instructions." Id. ¶ 2(a).

Plaintiff, on information and belief, alleges that Toh, Flecke, and the Barr Entities made separate misrepresentations to Shu that the money would be held in trust pending the resolution of Shu's immigration case, and that these defendants made all of these misrepresentations to induce Shu to deposit his money into Flecke's account. Id. ¶¶ 38–39. Further, defendants knew these misrepresentations were both material and false when made to Shu. Id. ¶ 40.

Plaintiff alleges that Shu and defendants entered into a series of contracts with defendants for immigration services, to be performed by defendants on behalf of Shu, and

UNITED STATES DISTRICT COURT           "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

that these contracts include the aforementioned Acquisition Agreement, the Immigration Agreements, and the Holding Agreement. Id. ¶ 58. Shu performed all conditions, covenants, and promises required of him pursuant to the terms of these agreements between the parties. Id. ¶ 60.

On or about May 23, 2016, Shu, under the terms of the Holding Agreement, deposited $250,000 into Flecke's client service account. FAC ¶ 20. Plaintiff alleges Shu only deposited the money based on the false representation made by Toh, Flecke, and Barr Defendants that the money would be held in a trust until Shu's immigration case was resolved. Id. ¶ 24. However, plaintiff alleges that "shortly after Mr. Shu made the deposit, Flecke distributed Mr. Shu's money to the Barr Defendants, without Mr. Shu's authorizations." Id. On information and belief, plaintiff alleges that Toh and Flecke (both parties to the Holding Agreement) knew or should have known that the representations made in paragraph 2 of the Acquisition Agreement that the $250,000 was "unconditionally refundable" was false and fraudulent and made for the purposes of convincing Shu to trust that his money would be held safe once he deposited it with Flecke. Id. 50. Accordingly, Toh, Flecke, and the Barr Entities deprived Shu of his rightful ownership and possession of the funds. Id. ¶ 51.

When Shu learned of the allegedly unauthorized transfer, he requested that defendants return his money. Id. ¶ 25. Plaintiff alleges "[i]nitially, Flecke acknowledged that, because the money was disbursed in err, he would work with Toh and the Barr Defendants to obtain the funds for Mr. Shu." Id. Between July 2016 and September 2016, Shu attempted to contact Toh and the Barr Entities regarding his immigration status and investment with Barr Entities but "was unable to obtain any meaningful information." Id. ¶ 26.

In August 2016, Shu spoke with Flecke who represented himself as an immigration attorney and offered Shu legal advice. Id. ¶¶ 27–28. During a series of email communications conversations, Flecke advised Shu on his immigration case and discouraged him from contacting Toh or the Barr Entities. Id. Specifically, plaintiff alleges that in an email on August 31, 2016, Flecke wrote to Shu that:

> I will gladly do what I can to put you on the proper path to achieving your immigration goals. Please deal with me directly instead of contacting Barr; if you need something from them, ask me first.

UNITED STATES DISTRICT COURT          "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

<u>Id.</u> ¶ 27. Plaintiff further alleges that Flecke continued to provide Shu legal advice in subsequent phone and email communications, including in a September 1, 2016 email in which Flecke wrote:

> I need to be more awake when I have meaningful conversations with clients. When we spoke this morning, I have [sic] forgotten about an important component of the E-2 Treaty Investor process: there must be a Treaty of Commerce and Navigation with the US. There is no such treaty (yet) between China and the US … L-1, therefore, is still your best option. I will look at L-1 opportunities for you and report back. My apologies for sending you down the wrong road for US immigration.

<u>Id.</u> ¶ 28.

On or about September 2, 2016, plaintiff alleges that Shu emailed Flecke to inquire about Toh's attempt to transfer Shu's money from an escrow account to another account held in To's name. <u>Id.</u> ¶ 29. Plaintiff alleges that in response to questions about the return of Shu's money, Flecke attempted to "deflect and stall for time" by presenting Shu with various offers to return part of the money. <u>Id.</u> For example, plaintiff alleges that Flecke told Shu in one email that "[b]ecause I know that expenses are going to be less than $50,000, I would like to send you $200,000 now-with the clear understanding that you are NOT settling this matter for $200,000." <u>Id.</u> In another email, Flecke made the offer to Shu that "[b]ecause this is taking longer than expected, I have a proposal for you: what do you think about my sending 50% of the amount to you now and deduct expenses from the remainder (assuming those expenses are modest and reasonable)?" <u>Id.</u> Plaintiff alleges that, after months of back and forth, Shu came to believe that Toh and Flecke only wanted to stall and had no intention of ever returning his investment funds to him. <u>Id.</u> ¶ 30.

On or about November 2016, plaintiff alleges that the Barr Entities offered to return all the money plus additional costs to Shu by February 2017. <u>Id.</u> ¶ 31. In late 2016, plaintiff alleges that "Flecke purposefully scuttled his law firm, DemarestBoston and. . . [began] operating a new investment firm, 1776 Wealth Architects, LLC." <u>Id.</u> ¶ 32. As a result of this November 2016 offer, defendants and Shu entered into an oral contract for defendants to repay the full amount of money by February 2017. <u>Id.</u> ¶ 72.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

At the time of filing of the instant action, Shu had not received any money from defendants. Id. ¶ 31.

Plaintiff further alleges that, pursuant to paragraph 1(a) of the Holding Agreement, the parties designated Flecke to act as "holding agent and to hold, safeguard, and disburse" the money that Shu deposited into Flecke's client service account pursuant to the terms and conditions of the Holding Agreement. Id. ¶ 77. Accordingly, Flecke owed fiduciary duties to Shu. Id. ¶ 78. Plaintiff alleges that Shu "reposed trust and confidence in Flecke," who was an attorney tasked as the agent for the client service account pursuant to the parties' agreements. Id. ¶ 79. As a result, a special relationship arose between Shu and Flecke under which Flecke owed fiduciary duties to Shu. Id. Plaintiff alleges that Flecke knowingly and willfully violated his fiduciary duties to Shu by distributing the $250,000.00 to the Barr Entities. Id. ¶ 80.

Last, plaintiff alleges that, with respect to defendants' fraud, conversion, and breach of fiduciary duties, defendants engaged in a series of unfair and unlawful business acts and practices prohibited by the UCL. Id. ¶¶ 85–89.

## III.  LEGAL STANDARDS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Additionally, Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "sound in fraud" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the

UNITED STATES DISTRICT COURT           "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

### A. Plaintiff's Alter Ego Allegations

Plaintiff alleges that the Toh is an alter ego of the Barr Entities and that Flecke is an alter ego of Demarest and Architects. FAC ¶¶ 43–44, 52–53, 64–65, 86–87. In turn, defendants argue that plaintiff's allegations are conclusory insofar as plaintiff alleges that the Barr Entities, Demarest, and Architects made misrepresentations to Shu. MTD at 5. Defendants contend that plaintiff fails to allege the names of persons who made representations, their authority to speak, to whom they spoke, what they said, and when it was said. Id. Plaintiff collectively refers to the "Barr Defendants," yet these entities are separate and distinct. Id. Further, plaintiff fails to allege any misrepresentations made on behalf of Demarest and Architects, and instead alleges that the funds were held in Flecke's account at Demarest and that Architects was an alter ego of Flecke. Id. Defendants argue that plaintiff fails to allege any facts that demonstrate a unity of interest and ownership between the alleged alter ego defendants. Id. Plaintiff responds that the Barr entities are "an extension of Toh," and that the FAC particularizes, as to each defendant, the "who, what, when, where, and how." Reply at 9–10.

The alter ego doctrine is a "sparingly used" exception to the general principal that "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538–39 (2000). Under California's alter ego doctrine, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation." Id. at 538.

To "satisfy the alter ego exception . . . the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Stewart v. Screen Gems-EMI Music, Inc.,

UNITED STATES DISTRICT COURT "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (quotation marks omitted). "Conclusory allegations of "alter ego" status are insufficient to state a claim. Rather, a plaintiff must allege specific facts support both of the elements of alter ego liability." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).

The Court finds that plaintiff's alter ego allegations are conclusory. Plaintiff repeatedly alleges that "the Barr Defendants served as the alter egos for Toh" and that "DemarestBoston Legal and 1776 Wealth Architects served as the alter egos for Flecke to further the fraudulent immigration investment scheme and thereby enrich [themselves] and others involved in that scheme." See FAC ¶¶ 42–43, 52–53, 64–65, 86–87. However, plaintiff fails to allege any facts that demonstrate unity of interest. For example, plaintiff has not alleged the existence of any of the factors that courts consider when assessing unity of interest, including:

> inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 245 (2002). Plaintiff does not specify what relationship Toh had with the Barr Entities, and instead alleges that Toh "used" these entities to "further the fraudulent immigration investment scheme and thereby enrich himself and others involved in that scheme." Id. ¶¶ 8–9. Thus, it is not clear from the face of the complaint what authority Toh had, if any, to act on behalf of the Barr Entities. Likewise, although plaintiff does specify that Flecke owned and operated Demarest, a law firm, plaintiff fails to specify Flecke's relationship to Architects, or what authority he had to act on behalf of Architects, if any. Id. ¶ 10–11.

In sum, with the exception of plaintiff's allegation that Flecke owns and operates Demarest, plaintiff fails to allege Toh's and Flecke's relationships to the corporate defendants, or what authority these individuals had to act on behalf of the corporate defendants. Furthermore, even if plaintiff had properly alleged the individuals' authority to act on behalf of the corporate defendants, plaintiff fails to allege facts that demonstrate unity of interest sufficient to allege alter ego. Thus, the Court is unable to determine

UNITED STATES DISTRICT COURT                          "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

whether, in the first instance, Toh or Flecke may be protected from liability by virtue of any authority to act on behalf of the corporate defendants. Even assuming that Toh and Flecke did have the authority to act on behalf of the corporate defendants, the Court is still unable to determine whether they may be individually liable under an alter ego theory due to plaintiff's lack of allegations with regard to any unity of interest.

Last, the Court is unable to determine whether Toh or Flecke may be individually liable, separate and apart from the corporate defendants, under plaintiff's claims for fraud, rescission and restitution due to fraud, breach of oral contract, and unlawful business practices because plaintiff does not allege whether Toh and Flecke are sued in their individual capacities.

Accordingly, the Court **DISMISSES** without prejudice plaintiff's claims for fraud, rescission and restitution due to fraud, breach of oral contract, and unlawful business practices with respect to Toh and Flecke.

### B. Plaintiff's Fraud-Based Claims

As an initial matter, the Court notes that the allegations supporting plaintiff's first claim for fraud appear to more properly support a breach of contract claim, since defendants' disbursement of $250,000 was "contrary to the parties' understanding and agreement." FAC ¶ 2. Yet, plaintiff alleges that Shu was fraudulently induced to invest $250,000 with the Barr entities because of "numerous false and fraudulent promises" made by Toh, Flecke, and the Barr Entities in the Acquisition Agreement. FAC ¶¶ 2, 18, 24, 35. Thus, although plaintiff does not explicitly plead the fraud claim as such, plaintiff is proceeding on a theory of "promissory fraud," which permits a plaintiff to state a claim in tort when a defendant fraudulently induces the plaintiff to enter into a contract. Richardson v. Reliance Nat. Indem. Co., No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) (citations omitted). While mere failure to perform on a contract does not constitute fraud, a promise made without the intention to perform can be actionable fraud. Locke v. Warner Bros., Inc., 57 Cal. App. 4th 354, 367 (1997). In response to a motion to dismiss, a plaintiff claiming promissory fraud must be able to point to specific, objective manifestations of fraudulent intent. Universal Studios Int'l B.V. v. Entm't Television Network FZE, No. 09-cv-01348-GAF-FFMX, 2009 WL 10675950, at *3 (C.D. Cal. Aug. 25, 2009) (citations omitted). Allegations of promissory fraud must meet Rule 9(b) requirements, and a plaintiff is required to plead facts from

UNITED STATES DISTRICT COURT "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

which the Court can infer that the allegedly fraudulent statements were false *when made*. Id. (emphasis added). Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation. Id. To satisfy Federal Rule of Civil Procedure 9(b), a plaintiff must "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

Here, plaintiff asserts claims for fraud (Claim 1), conversion (Claim 2), rescission and restitution based on fraud (Claim 3), and unfair and unlawful business practices under the UCL (Claim 6). FAC ¶¶ 34–47, 51, 57–70, 85. Because each of these claims alleges a single course of fraud, the Court finds that these claims sound in fraud and must be pleaded with particularity. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."). In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 953–54 (S.D. Cal. 2012).

  **1. Fraud**

Plaintiff alleges that Shu was induced to deposit his money based on two specific misrepresentations. Id. ¶ 39. First, plaintiff alleges that the Barr Entities falsely promised in the Acquisition Agreement that Shu's $250,000 deposit into Flecke's client service account would be held in trust until Shu's immigration case was resolved. Id. ¶¶ 18, 24, 35. Relatedly, plaintiff alleges that the Barr Entities "made separate misrepresentations" to Shu that Shu's investment would be held in trust pending the resolution of Shu's immigration case. Id. ¶ 38. Plaintiff alleges that the Barr Entities had "no intention" of keeping Shu's money in escrow. Id. ¶ 35. Second, plaintiff alleges that—pursuant to the Acquisition Agreement—Toh promised that Shu's money would be unconditionally refunded if Shu failed to acquire U.S. permanent residency within a period of three years. Id. ¶ 36–37. Plaintiff avers that Toh knew or should have known that the Acquisition Agreement's provision of an "unconditional refund[]" if Shu did not acquire U.S. permanent residency was "false and fraudulent" and made to convince Shu

UNITED STATES DISTRICT COURT "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

that his money would be safely held.  Id. ¶ 21.  Plaintiff also alleges that *all* defendants knew these two misrepresentations were false.  Id. ¶ 40.  Since plaintiff specifies (a) the date of the Acquisition Agreement, (b) the particular promises that were fraudulent, and (c) that defendants did not intend to perform their promises, the Court finds that plaintiff adequately pleads the "what," "when," and "how" of the misconduct charged and what was misleading about the statements.  See Cafasso, 637 F.3d at 1055.  Because the Acquisition Agreement was made between Barr Holdings, LLC and Shu, plaintiff adequately pleads the "who"—namely, that Barr Holdings made the alleged misrepresentations.  See Acquisition Agreement.  Thus, the Court **DENIES** defendants' motion to dismiss plaintiff's first claim for relief as against Barr Holdings, LLC.

However, the Acquisition Agreement does not contain promises by Barr Consulting and Holdings, Inc., Demarest, or Architects.  Plaintiff does not plead with particularity that Barr Consulting and Holdings, Inc., Demarest, or Architects made misrepresentations to Shu.  Accordingly, the Court **DISMISSES** without prejudice plaintiff's first, second, third, and sixth claims as against Barr Consulting and Holdings, Inc., Demarest, and Architects.  Plaintiff may file an amended complaint that either alleges the requisite facts under a promissory fraud claim or, more properly, a breach of contract claim with respect to all defendants.

### 2. Rescission and Restitution Due to Fraud

Because plaintiff adequately pleads his claim for fraud with respect to Barr Holdings, LLC, plaintiff has stated a claim for rescission and restitution due to fraud.  "[W]hen the agreement itself is procured by fraud, none of its provisions have any legal or binding effect."  Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n, 56 Cal.2d 329, 344 (1961). "[F]raud which was the inducing cause of the execution of the contract renders the whole instrument vulnerable[.]"  Palladine v. Imperial Valley Farm Lands Ass'n, 65 Cal. App. 727, 747 (1924).  Thus, "[i]t is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind[.]"  Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp., 32 Cal.App.4th 985, 994–95 (1995) (quotation marks omitted).  The Court thus **DENIES** defendants' motion to dismiss plaintiff's third claim for relief as against Barr Holdings, LLC.

UNITED STATES DISTRICT COURT  "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

### 3. Unfair and Unlawful Business Practices

Additionally, plaintiff has also stated a derivative UCL claim against Barr Holdings, LLC. See Ellis v. J.P. Morgan Chase & Co., 950 F. Supp. 2d 1062, 1085 (N.D. Cal. 2013) (fraud claim sufficient to maintain claim under the fraud prong of the UCL); State Comp. Ins. Fund v. Drobot, No. 13-cv-956-AG, 2013 WL 12125748, at *6 (C.D. Cal. Nov. 20, 2013) (same). Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiff's sixth claim for relief as against Barr Holdings, LLC.

### 4. Conversion

"The elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages [resulting from the conversion]." Oakdale Vill. Group v. Fong, 43 Cal. App. 4th 539, 543–44, (1996). In addition, "[i]t is necessary to show that the alleged converter has assumed control over the property 'or that the alleged converter has applied the property to his own use.'" Mindys Cosmetics, Inc. v. Dakar, 611 F. 3d 590, 601 (9th Cir. 2010) (quoting Oakdale, 43 Cal. App. 4th at 544). Defendants contend that plaintiff's conversion claim fails because (a) plaintiff does not set out what *each* defendant did, and (b) plaintiff does not allege that defendants intended to exercise ownership over the plaintiff's property. MTD at 8. Plaintiff argues that he adequately pleads a claim for conversion because he "alleges that Flecke wrongfully disbursed Mr. Shu's money to the Barr Defendants, without Mr. Shu's authorization, Defendants Toh and Flecke, either individually or through their respective companies, deprived Mr. Shu (and later Plaintiff) of his rightful ownership and possession or Mr. Shu's $250,000.00." Opp'n at 11 (citing FAC ¶¶ 49–51). First, the Court observes that paragraphs 49 through 51 of the FAC, which set forth plaintiff's conversion claim, do not allege the facts described by plaintiff:

> 49. Plaintiff is the owner of the $250,000.00 in funds that Mr. Shu transferred to Defendant Flecke's client service account on or around May 23, 2016.
>
> 50. The Holding Agreement explicitly references the Acquisition Agreement and sets forth the instructions for the deposit by Mr. Shu of the $250,000 into Flecke's client trust account. On information and belief, Toh, a party to

UNITED STATES DISTRICT COURT     "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

> the Holding Agreement and Flecke, a party to the Holding agreement, knew or should have known that the representations made in Paragraph 2 of the Acquisition Agreement, in particular that that the $250,000 that Mr. Shu was to deposit into Flecke's client trust account was "unconditionally refundable," were false and fraudulent, and made for the purpose of convincing Mr. Shu to trust that his money would be held safe once he deposited it with Flecke.
>
> 51. By engaging in the fraudulent scheme to defraud Mr. Shu of the $250,000.00, Toh, Flecke, and the Barr Defendants deprived Plaintiff of his rightful ownership and possession of the funds. In addition, as a direct and proximate result of Defendants' misconduct and delay tactics, Plaintiff has expanded a significant amount of time and resources to attempt to recover the monies owed to Mr. Shu.

FAC ¶¶ 49–51. Rather, these paragraphs refer to the alleged misrepresentation in the Acquisition Agreement that Shu's investment would be "unconditionally refundable." These paragraphs do not include allegations about wrongful disbursement of monies, and they do not include any reference to Barr Holdings, LLC—the only party specifically alleged to have made this misrepresentation to Shu. Moreover, the Court notes that the Acquisition Agreement provides that the $250,000 is "unconditionally refundable should the purchaser do not [sic] acquire U.S. permanent residency after a reasonable period of 3 years." FAC & Ex. A. Thus, the terms of the Acquisition Agreement—signed May 5, 2016—provide that the funds would be unconditionally refundable *only if* Shu did not gain permanent residency by May 5, 2019. The Court concludes that plaintiff must plead with greater particularity which specific defendants have allegedly wrongfully converted plaintiff of property, and, if they have wrongfully converted plaintiff's property, whether it was done with the intent to convert the funds. Accordingly, the Court **DISMISSES** without prejudice plaintiff's claim for conversion as against all defendants.

### C. Breach of Oral Contract

Plaintiff alleges that, in November 2016, "the Barr Defendants finally offered to refund $259.780.00 to Mr. Shu by February 2017" for the initial investment and Shu's out of pocket expenses. FAC ¶ 31. As a result, in his claim for breach of oral contract (Claim 4), plaintiff avers that all defendants breached an oral contract with Shu because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

defendants promised to repay Shu the full amount of the money Shu invested by February 2017, but failed to do so. Id. ¶ 72. Because the only purported oral contract that plaintiff alleges in the FAC is one between the Barr Entities and Shu, the Court **DISMISSES** without prejudice Claim 4 as against Demarest and Architects.

Defendants argue that plaintiff's breach of oral contract claim is deficient because the agreement that plaintiff alleges is not support by any consideration. MTD at 9.

Plaintiff argues that Shu's agreement to wait for defendants to make good on their promise constitutes consideration. Opp'n at 12. Plaintiff is correct that "[f]orbearing suit or extending time for performance which suspends a legal right constitutes a sufficient consideration." Levine v. Tobin, 210 Cal. App. 2d 67, 69 (1962); see also Bank of America N.T. & S.A. v. Hollywood Imp. Co., 46, Cal. App. 2d 817, 822 (1941) ("Any suspension or forbearance of a legal right constitutes a sufficient consideration."). Defendants point out that "[t]he mere forbearance to sue without agreement to forbear, or the mere act of forbearance if not given for the promise does not constitute a consideration." Anglo California Nat. Bank of San Francisco v. Far WestLumber Co., 152 Cal. App. 2d 284, 286 (1957). However, "[a]n *implied* promise to forbear exercising a right can be consideration as readily as an explicit promise not to do so." Union Oil Co. of Cal. v. Terrible Herbst, Inc., 331 F.3d 735, 741 (9th Cir. 2003) (emphasis added). Reading the FAC in the light most favorable to plaintiff, the Court finds that plaintiff has adequately alleged that Shu impliedly agreed to refrain from suit until February 2017 and this implied promise to forbear constitutes good consideration.

In their reply, defendants argue that plaintiff fails to allege that Shu accepted the Barr Entities offer of repayment by February 2017. Reply at 7. However, reading the FAC in the light most favorable to plaintiff, the Court can reasonably infer from the FAC that Shu accepted the Barr Entities' offer. See FAC ¶ 31 (alleging that the Barr entities offered to refund Shu and then noting that defendants failed to do so).

Accordingly, the Court concludes that plaintiff has adequately pleaded a claim for breach of oral contract. The Court **DENIES** defendants' motion to dismiss plaintiff's breach of oral contract claim with respect to the Barr Entities.

UNITED STATES DISTRICT COURT       "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

### D.     Breach of Fiduciary Duty

In California, a fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." Herbert v. Lankershim, 9 Cal.2d 409, 483 (1937). "[T]he existence of a fiduciary relation is a question of fact which properly should be resolved by looking to the particular facts and circumstances of the relationship at issue." In re Daisy Systems Corp., 97 F.3d 1171, 1178 (9th Cir.1996) (citing Kudokas v. Balkus, 26 Cal. App. 3d 744 (1972)). In order to plead a cause of action for breach of fiduciary duty, "there must be shown [1] the existence of a fiduciary relationship, [2] its breach, and [3] damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991).

Here, plaintiff alleges "[b]y virtue of his designated role as Agent and sole signatory of the client service account . . . Flecke owed fiduciary duties to Mr. Shu." FAC ¶ 78. Plaintiff further alleges Flecke breached his fiduciary duty by disbursing the money in the holding account "to the Barr Defendants, without Mr.Shu's authorization." Id. ¶ 80. Generally, "[t]he agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow." Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co., 41 P.3d 548, 551–52 (Cal. 2002). The Holding Agreement provides the following instructions:

> The Holding Fund Shall be disbursed in cash by the Agent as follows: (a) Upon receipt by the Agent of written instructions from Barr, absent contrary written notice from the Depositor, the Agent shall disburse the Holding Fund in accordance with Barr's instructions.

Holding Agreement ¶ 2(a). Plaintiff does not dispute that defendants provided written instructions authorizing Flecke to disburse the money. Instead, plaintiff contends Flecke breached his fiduciary duty by disbursing the money without Shu's authorization. FAC ¶ 80. However, the Holding Agreement's instructions allow Fleck to distribute funds at any time with written instructions from Barr, unless Shu has given "contrary written notice." Plaintiff does not allege Shu gave any written notice to Flecke.

Additionally, plaintiff claims that "Flecke was designated to hold and safeguard Mr. Shu's funds in trust until Mr. Shu's immigration status was resolved." Id. ¶ 79.

| | | | |
|---|---|---|---|
| UNITED STATES DISTRICT COURT | | "O" | |
| CENTRAL DISTRICT OF CALIFORNIA | | | |

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

However, the Holding Agreement specifically provides that Flecke "shall not be required to take notice of the Business Acquisition Agreement and shall have no duty or responsibility to take any action pursuant to the terms thereof." Holding Agreement ¶ 5(b). Thus the Court finds that Flecke was not given any instructions regarding Shu's immigration case.

Plaintiff also appears to allege that "a special relationship arose between Mr. Shu and Flecke" based on language of the Holding Agreement and Flecke's role as the agent that imposed an additional fiduciary duty. However, "[a] contract does not automatically give rise to a fiduciary relationship, as creation of such a duty requires unequivocal contractual language." Dutra v. BFI Waste Systems of North America, Inc., No. 12-cv-2950662, 2103 WL 2950662, at *6 (N.D. Cal. June 14, 2013) (quotation marks omitted). The Holding Agreement does not contain any language that unequivocally created a duty beyond Flecke's limited duty as escrow agent. In fact, the Holding Agreement specifically provides that "[t]he Holding Agent shall have no implied duties or obligations[.]" Holding Agreement ¶ 5(a).

Thus, the Court finds plaintiff fails to sufficiently allege that Flecke breached a fiduciary duty as agent of the holding account. Accordingly, the Court **DISMISSES** without prejudice plaintiff's claim against Flecke for breach of fiduciary duty.

## V. CONCLUSION

In accordance with foregoing, the Court **DISMISSES** without prejudice plaintiff's first, second, third, fourth, and sixth claims with respect to Toh and Flecke.

The Court **DISMISSES** without prejudice plaintiff's first, second, third, and sixth claims as against Barr Consulting and Holdings, Inc., Demarest, and Architects.

The Court **DISMISSES** without prejudice plaintiff's second claim against Barr Holdings, LLC.

The Court **DISMISSES** without prejudice plaintiff's fourth claim as against Demarest and Architects.

The Court **DENIES** defendants' motion to dismiss plaintiff's fourth claim as against the Barr Entities.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-2876-CAS (RAOx) | Date | September 18, 2017 |
|---|---|---|---|
| Title | ZHANG XUDONG v. JOHN BRADFORD FLECKE ET AL. | | |

The Court **DENIES** defendants' motion to dismiss plaintiff's first, third, and sixth claims as against Barr Holdings, LLC.

The Court **DISMISSES** without prejudice plaintiff's fifth claim against Flecke.

Plaintiff is hereby granted **28 days leave** to file an amended complaint curing the deficiencies identified herein. Failure to amend within 28 days of the date of this order may result in dismissal with prejudice.

The Court further sets a telephonic status conference for **October 2, 2017 at 12:00 p.m**., to discuss status of the case. Counsel for PLAINTIFF is ordered to initiate the telephone conference call THROUGH THE TELEPHONE OPERATOR to include all counsel of record, and CHAMBERS at (213) 894-8551 on the date and time scheduled. If the Court's conference line is busy, continue to try to connect, the Court may be finalizing a previous conference call. Counsel shall be available 30 minutes prior and 30 minutes after the time scheduled for the telephone conference. NOTE: During the telephone hearing, counsel must identify themselves before they speak for the benefit of the Court and the Court Reporter.

IT IS SO ORDERED.

|  |  | 10 |
|---|---|---|
| Initials of Preparer | | IV |